UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Case No. 05-235-1 (RMC) |
| ) | |
| CARLOS MARIO JIMENEZ NARANJO, ) | |
| a.k.a. "Macaco," ) | |
| a.k.a. "Javier Montañez, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION
### AND PROPOSED ORDER

The United States respectfully moves this court to order the pretrial detention of defendants CARLOS MARIO JIMENEZ NARANJO ("JIMENEZ NARANJO") pursuant to 18 U.S.C. § 3142(e). As set forth herein, there is a statutory presumption in favor of detention because the defendant is charged with, inter alia, Conspiracy to Manufacture and Distribute for the Purpose of Unlawful Importation Into the United States Five Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 959 and 960, and with engaging in drug trafficking with the knowledge and intent to provide pecuniary benefit to a terrorist organization, in violation of 21 U.S.C. §960a, offenses which carry a maximum penalty of more than ten years imprisonment. Moreover, the government believes the defendant has no ties to the United States; other than his situation as an extradited defendant, the defendant has no legal status in the United States; the government believes the defendant has the ability to flee and would flee if released from custody; and the government beleives the defendant would pose a danger to the community

unless he is detained.

I.    **Factual Background**

The charges in this case arise from evidence obtained during an investigation which revealed that JIMENEZ NARANJO was one of the highest-ranking leaders of the *Autodefensas Unidas de Colombia* (United Self-Defense Forces of Colombia, the "AUC")[1]. In 2005 it was estimated that the AUC was responsible for approximately 30% of the cocaine imported into the United States. The AUC controlled its drug trafficking empire through violence and intimidation. In 2005, the Colombian Government began a demobilization program, under which AUC members who surrendered their weapons, were incarcerated, and provided truthful statements and agreed to pay restitution to their victims, would receive limited prison sentences and would not be extradited to the United States. The defendant entered the Justice and Peace program in 2005. At the time of his demobilization, the defendant was the leader of the Bloque Central Bolivar ("BCB"), one of the most powerful blocks in the AUC, and he directly commanded approximately 7,000 soldiers, more than any other AUC leader. The defendant was also a member of the powerful Estado Mayor, which was the governing body of the AUC. In August of 2007, Colombian President Alvaro Uribe expelled JIMENEZ NARANJO for continuing his drug trafficking activities while incarcerated. According to the Colombian Police, in August of 2007, when he was being transferred between prisons in Colombia, he threatened the police and military security personnel who were escorting him, and told them that he had a 7,000 man army and that he would go to war if anything happened to him.

---

[1] On September 10, 2001, the U.S. Department of State designated the AUC a Foreign Terrorist Organization ("FTO") under U.S. law.

The evidence in this case, which includes the testimony of cooperating witnesses and drug seizures in the United States, Colombia, and on the high seas, establishes that the JIMENEZ NARANJO organization was involved in all aspects of the cocaine industry. This included control over coca producing land, manufacturing facilities for producing cocaine hydrochloride, transportation routes within Colombia, and transportation routes to Mexico, Central America, and the United States. The JIMENEZ NARANJO organization was responsible for sending multi-ton quantities of cocaine to Central America and the United States between 1999 and 2007. Since 1999, at least 12 seizures of cocaine in the United States have been connected, through distinctive markings on the cocaine, to cocaine produced by JIMENEZ NARANJO's cocaine laboratories in Colombia.

## II. Legal Analysis

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. See e.g., United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the Government is permitted to proceed by proffer to establish other facts relevant to the bail

3

decision.  United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

      Several other factors in the detention statute also support the Government's request for pretrial detention. First the nature and circumstances of the offense are compelling.  18 U.S.C. § 3142(g)(1).  Second, the weight of the evidence against the defendant is substantial consisting of seizures of cocaine, and cooperating and/or government witnesses.  18 U.S.C. § 3142(g)(2). Third, the fact that the defendant is a Colombian citizen with no known ties to the United States argues in favor of his detention pending trial. 18 U.S.C. § 3142(g)(3)(A).

      Numerous courts have ordered pretrial detention of foreign defendants without any contacts to the United States.  E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was citizen of Netherlands who faced possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus presented a serious risk of flight which justified pretrial detention).

      Finally, the defendant constitutes a clear and present danger to the community.  The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus, constitute a danger to the community.  Furthermore, the defendant was a leading member of the AUC, an organization recognized by the United States as a terrorist organization.  See United States v. Knight, 636 F.Supp. 1462 (S.D. Fla. 1986).  Accord United States v. Creekmore, 1997 W.L.

4

732435 (D.D.C. 1997)(Facciola, J.).

### III.     Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendant without a bond pending trial be granted.

Dated: May 11, 2008.

Respectfully submitted,

/s/_____
Glenn C. Alexander
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 305-0524
glenn.alexander@usdoj.gov